**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

PALM GREENS AT VILLA DEL
RAY RECREATION CONDOMINIUM
ASSOCIATION, INC.,

Debtor.

_____/

Case No.  26-11060-EPK

Chapter 11

**DEBTOR'S MOTION FOR AUTHORITY TO ENTER INTO INSURANCE**
**PREMIUM FINANCE AGREEMENT EFFECTIVE AS OF JANUARY 31, 2026**

Debtor-in-Possession, PALM GREENS AT VILLA DEL RAY RECREATION

CONDOMINIUM ASSOCIATION, INC. ("Debtor") by its undersigned proposed counsel and

pursuant to 11 U.S.C §§ 105(a) and 364, requests the Court enter an order authorizing the Debtor

to enter into the attached insurance premium finance agreement effective as of January 31, 2026,

as set forth below, and states:

**Jurisdiction**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested is 11 U.S.C. §§ 105 and 364.

**Procedural and Factual Background**

3.      On February 3, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the United States Bankruptcy Code.

4.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

5.      The Debtor requires comprehensive insurance, to more fully cover any and all potential losses that may occur as a result of the Debtor's business operations, including but not limited to:  (a) machinery, boiler and equipment; (b) crime; (c) directors and officers; (d) general liability; (e) workers compensation; (f) property; and (g) gap (collectively, the "Insurance Policies").  Moreover, the Office of the United States Trustee requires the Debtor to have adequate insurance in place.

6.      The Debtor's prior insurance policies were set to expire on January 31, 2026, just three (3) days after the Petition Date.

7.      Accordingly, the Debtor had to obtain new Insurance Policies effective as of January 31, 2026 in order to comply with the requirements of the United States Trustee and to protect the bankruptcy estate from any post-petition claims that could arise and be deemed an administrative expense.

8.      However, as of January 31, 2026, the Debtor did not have sufficient cash on hand to pay the entire amount of the premium for the new Insurance Policies.

9.      As such, the Debtor is seeking approval of this Court, effective as of January 31, 2026, to enter into an insurance premium finance agreement for the new Insurance Policies and make the required down payment, as set forth below, in order to ensure the required insurance coverage is in place.

## The Premium Finance Agreement

10.     The Debtor has therefore executed a Premium Finance Agreement with First Insurance Funding for the financing of premiums for the Debtor's new Insurance Policies on January 31, a copy of which is attached hereto as Exhibit "A".

11.     Pursuant to the Premium Finance Agreement, First Insurance Funding has agreed to provide financing to the Debtor for the purchase of new Insurance Policies listed in said agreement.

12.     The total premium on the new Insurance Policies $211,814.76 (the "Premium") and the required down payment that has already been paid on February __, 2026 is $20,521.48, leaving a total amount financed of $191,962.83.

13.     The amount financed will accrue interest at an annual percentage rate of 6.5%, for a total finance charge of $6,295.01.

14.     By virtue of the terms of the Premium Finance Agreement, the Debtor will become obligated to pay First Insurance Funding the total sum, with interest, of $198,257.84, through 11 consecutive monthly installments of $18,023.44 each due and payable by the 28th day of each month beginning on February 28, 2026.

15.     Additionally, the Premium Finance Agreement grants First Insurance Funding a first priority lien on and security interest in the financed insurance policies and any additional premium required under the new Insurance Policies and also contains certain other terms designed to protect First Insurance Funding's interest in the event of a payment default, which are set forth in Sections 10 through 13 of the Premium Finance Agreement.

## Relief Requested

16.     The Debtor has determined that it is in the best interest of this bankruptcy estate to enter into the Premium Finance Agreement.  Without proper insurance, the Debtor's ability to

reorganize would be eliminated and parties in interest, including the United States Trustee, would have the immediate ability to seek dismissal of this case.

17.     The Debtor believes that the Premium Finance Agreement is a commercially fair and reasonable means to ensure continued insurance coverage.

18.     The Debtor respectfully requests that this Court enter an order, pursuant to 11 U.S.C. §§ 105(a) and 364, authorizing the Debtor to enter into the Premium Finance Agreement effective as of January 31, 2026.

**Basis for Requested Relief**

19.     This Court may authorize the Debtor to enter into the Premium Finance Agreement under 11 U.S.C. § 105(a), which grants broad authority to a court to enforce the provisions of the Bankruptcy Code under equitable, common-law doctrines.

20.     Moreover, if a debtor is unable to obtain unsecured credit allowable as an administrative expense under 11 U.S.C. § 503(b)(1), then the Court, pursuant to 11 U.S.C. § 364(c), and after notice and hearing, may authorize the debtor to obtain credit or incur debt: (a) with priority over any or all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b); (b) secured by a lien on property for the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien.

21.     The foregoing provisions authorize the Court to grant the relief requested in this Motion.

**A.      Approval of the Premium Finance Agreement is Necessary**

22.     The Premium Finance Agreement is essential to the Debtor's operations.  Without the Premium Finance Agreement, the Debtor will be unable to obtain the proper insurance coverage to enable it to continue operations.

23.     In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Federal Savings and Loan Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4ᵗʰ Cir. 1986). Where there are few lenders likely to be able or willing to extend the necessary credit to the Debtor, "it would be unrealistic and unnecessary to require [the trustee] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

24.     After appropriate investigation and analysis, the Debtor has reasonably concluded that First Insurance Funding's proposal was the best alternative available.

25.     Accordingly, the Debtor has concluded in its best business judgment that the Premium Finance Agreement is the most favorable for the estate and its creditors.

**B.      The Premium Finance Agreement is Fair, Reasonable and Appropriate**

26.     The proposed terms of the Premium Finance Agreement are fair, reasonable and adequate in that these terms do not substantially affect the proceedings nor prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors and interested parties.

27.     The purpose of the Premium Finance Agreement is to enable the Debtor to maintain and ensure proper insurance coverage on the Debtor's property during this Chapter 11 case by allowing the Debtor to obtain the necessary financing for the new Insurance Policies.

**C.      Application of the Business Judgment Standard**

28.     As set forth above, after appropriate investigation and analysis, the Debtor has concluded that the Premium Finance Agreement is in the best interests of the estate.

29.     Bankruptcy courts routinely defer to the Debtor's business judgment on most business decisions, including the decision to borrow money.   *See In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) (stating that "[b]usiness judgments should be left to the board room and

not to this Court") (*citing In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)). "[A] court may not interfere with a reasonable business decision made in good faith by a trustee." *In re Airlift Int'l*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

22.     For all of the above reasons, good cause exists in authorizing the Debtor to enter into the Premium Finance Agreement attached hereto as Exhibit "A".

**WHEREFORE**, the Debtor respectfully requests entry of an order substantially in the form of the attached Proposed Order: (a) granting the Motion; (b) authorizing the Debtor to execute and enter into the Premium Financing Agreement with First Insurance Funding effective as of January 31, 2026; (c) authorizing the Debtor to grant First Insurance Funding a first priority security interest in the insurance policy for which the insurance policy relates to; and (d) for such other and further relief as the Court deems just and proper under the circumstances.

Dated this 22nd day of February, 2026.

**LAW OFFICE OF MARK S. ROHER, P.A.**
*Proposed Counsel for Debtor*
1806 N. Flamingo Road, Suite 300
Pembroke Pines, Florida 33028
Email:  mroher@markroherlaw.com
Telephone:  (954) 353-2200

By:     */s/ Mark S. Roher*
          Mark S. Roher
          Florida Bar No. 178098

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of February, 2026, a true and correct copy of

the foregoing was served by CM/ECF on all parties listed below.

*/s/ Mark S. Roher*
Mark S. Roher


Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jordan L Rappaport, Esq on behalf of Interested Party Palm Greens at Villa Del Ray, Condo 2 Association
office@rorlawfirm.com, 1678370420@filings.docketbird.com

Mark S. Roher, Esq. on behalf of Debtor Palm Greens at Villa Del Ray Recreation Condominium Association, Inc.
mroher@markroherlaw.com, ECF.markroherlaw@gmail.com;ECF2.markroherlaw@gmail.com

Mark S. Roher, Esq. on behalf of Plaintiff Arthur Robins
mroher@markroherlaw.com, ECF.markroherlaw@gmail.com;ECF2.markroherlaw@gmail.com

David L Rosendorf, Esq on behalf of Creditor Lennar Homes LLC
dlr@kttlaw.com, rcp@kttlaw.com;ycc@kttlaw.com

Tate M Russack on behalf of Debtor Palm Greens at Villa Del Ray Recreation Condominium Association, Inc.
tate@russack.net, lori@rlcfirm.com;cami@rlcfirm.com;lori@rlcfirm.com;George@rlcfirm.com;russacktr78446@notify.bestcase.com;patty@rlcfirm.com

**LENDER:**

## PREMIUM FINANCE AGREEMENT

☐ Personal   ☑ Commercial   ☐ Additional Premium

# EXHIBIT "A"

**FIRST INSURANCE** FUNDING
A WINTRUST COMPANY

450 Skokie Blvd, Ste 1000
Northbrook, IL 60062-7917
P:(800) 837-3707 F:(800) 837-3709
www.firstinsurancefunding.com

**Quote #: 91982355**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy)<br>Palm Greens at Villa Del Ray Recreation<br>5801 Via Delray<br>Delray Beach, FL 33484-1331 | | (Name and Business Address)<br>BROWN & BROWN OF FLORIDA INC.<br>1201 WEST CYPRESS CREEK ROAD SUITE 130<br>FORT LAUDERDALE, FL 33309 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 211,814.76 | 20,521.48 | 191,293.28 | 669.55 | 191,962.83 | 6,295.01 | 198,257.84 | 6.500 % |

***YOUR PAYMENT SCHEDULE WILL BE:***   ***Mail Payments to: FIRST INSURANCE Funding, PO Box 7000, Carol Stream, IL 60197-7000***

| Number of Payments | Amount of Each Payment | **First Installment Due** | 2/28/2026 |
|---|---|---|---|
| 11 | 18,023.44 | **Installment Due Dates** | 28th (Monthly) |

Certain information contained in the Loan Disclosure section may change in accordance with Section 19 of this Agreement.

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST INSURANCE Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00317-LIBERTY MUTUAL FIRE INS CO<br>[CX:0]   [90%PR] A/F (912.15) | EQPT | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 1,010.00<br>0.00<br>0.00 |
| TBD | C00048-HANOVER INSURANCE COMPANY<br>[CX:0]   [90%PR] A/F (760.84) | CRME | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 842.46<br>0.00<br>0.00 |
| **(Policies continued on next page.)** | | | | **TOTAL** | 211,814.76 |

Q# 91982355, PRN: 020226, CFG: 12E-16-20D, RT: BROWN-CONDO-20DD, DD: 20, BM: Invoice, Qtd For: A07607 Original, Memo 0

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space.  (2) You are entitled to a completely filled-in copy of this Agreement.  (3) You have the right to prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery. (6) Up to 2 ½% of the price of the premiums indicated above may be paid to the undersigned agent or broker and/or its affiliated companies by LENDER as part of a contractual arrangement relating to premium finance agreements.**

Signed by:
*Lisa Defabritiis*
7F01FD8747B04F0...

February 3, 2026 | 9:59:04 AM CST

_____   _____   _____   _____
Signature of Insured or Authorized Agent          Date          Signature of Agent          Date

**FIF1122NBP**

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.**  This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.**  Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.**  After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.**  Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent.  LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.**  Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER may pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119.  Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.**  Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.**  The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.**  Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

---

### AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1)  Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will  hold harmless and indemnify LENDER and its successors and assigns  against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

# SCHEDULE OF POLICIES

Insured:  Palm Greens at Villa Del Ra

Quote #: 91982355

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C03606-SIRIUSPOINT SPECIALTY INSURANCE CORP.<br>[CX:0]   [90%PR] A/F [13,825.80] | D&O | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 15,309.00<br>0.00<br>0.00 |
| TBD | C03839-LIO SPECIALTY INSURANCE CO.<br>[CX:0]   [90%PR] A/F [107,628.84] | GL | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 119,175.00<br>0.00<br>0.00 |
| TBD | C00738-ZENITH INSURANCE CO<br>[CX:0]   [90%PR] A/F [444.33] | WC | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 492.00<br>0.00<br>0.00 |
| TBD | C03249-HDI GLOBAL SPECIALTY SE<br>[CX:0]   [90%PR] A/F [61,760.76] | PROP | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 68,386.30<br>0.00<br>0.00 |
| TBD | C03046-ATLANTIC MUTUAL LEGAL DEFENSE INS CO<br>[CX:0]   [90%PR] A/F [5,960.56] | GAP | 12 | 1/31/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 6,600.00<br>0.00<br>0.00 |

FIF0214P-SCH

# FUNDING BREAKDOWN BY POLICY



**FIRST INSURANCE** FUNDING
A WINTRUST COMPANY

**INSURED NAME**    Palm Greens at Villa Del Ray Recreation    **QUOTE #** 91982355    **DATE**   2/2/2026

**Disclaimers:**

- Funding Amount assumes the Down Payment was collected by the agent/broker. If FIRST collected the Down Payment, the Funding Amount will equal the Total Premium.
- If one or more installments are past due and are collected or retained by the agent/broker at the time the loan is booked, then the Funding Amount will need to be confirmed by your Loan Executive.

| POLICY # | COVERAGE | CARRIER/GA | TOTAL PREMIUM | DOWN PAYMENT | FUNDING AMOUNT | COMMISSION |
|---|---|---|---|---|---|---|
| TBD | EQPT | C00317-LIBERTY MUTUAL FIRE INS CO | $1,010.00 | $97.85 | $912.15 | $0.00 |
| TBD | CRME | C00048-HANOVER INSURANCE COMPANY | $842.46 | $81.62 | $760.84 | $0.00 |
| TBD | D&O | C03606-SIRIUSPOINT SPECIALTY INSURANCE CORP. | $15,309.00 | $1,483.20 | $13,825.80 | $0.00 |
| TBD | GL | C03839-LIO SPECIALTY INSURANCE CO. | $119,175.00 | $11,546.16 | $107,628.84 | $0.00 |
| TBD | WC | C00738-ZENITH INSURANCE CO | $492.00 | $47.67 | $444.33 | $0.00 |
| TBD | PROP | C03249-HDI GLOBAL SPECIALTY SE | $68,386.30 | $6,625.54 | $61,760.76 | $0.00 |
| TBD | GAP | C03046-ATLANTIC MUTUAL LEGAL DEFENSE INS CO | $6,600.00 | $639.44 | $5,960.56 | $0.00 |
| | | Earned Broker Fee | $0.00 | $0.00 | | |

www.firstinsurancefunding.com    (800) 837-3707

FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A.

Docusign Envelope ID: CD4191A1-70E6-481D-91BB-A6278A7B87FB

# FUNDING BREAKDOWN BY POLICY

**FIRST INSURANCE FUNDING**
A WINTRUST COMPANY

| TOTALS: | $211,814.76 | $20,521.48 | $191,293.28 | $0.00 |
|---|---|---|---|---|

FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A.

**ATLANTIC MUTUAL LEGAL DEFENSE INSURANCE COMPANY, INC.**

COMMERCIAL INSURANCE APPLICATION

| APPLICANT INFORMATION |
|---|

Agency Name: Brown & Brown Insurance Services, Inc.

Individual Completing This Application: Deziree Williams

Phone #: 9543311418     Email Address: dwilliams@bbftlaud.com

Producer Name: DEZIREE WILLIAMS     Producer License #: W384246

| ACCOUNT INFORMATION |
|---|

Requested Effective Date: 1/31/2026     FEIN#: 59-1968008

Name of Insured: Palm Greens at Villa Del Ray Recreation Condominium Association, Inc.

Contact Name: LISA DEFABRITIIS     Title: Board Member

Phone #: (617) 669-9094     Email Address: amici.sperlonga@gmail.com

### *Mailing Address*

Street Address Line 1: 5801 VIA DELRAY

Street Address Line 2:

City: DELRAY BEACH     State: FL     Zip: 33484

Has insured been involved in any lawsuit or legal claim in the past 5 years?   [X] Yes   [ ] No

Have complaints been filed against insured with a state, county or government agency?   [ ] Yes   [X] No

### *Required Underlying Insurance Information*

General Liability Carrier LIO Specialty Insurance Company

Directors & Officers Carrier SiriusPoint Specialty Insurance Corporation

***Election of optional coverage.*** *For an additional premium, you may elect to purchase an extended reporting period (5 years) for directors or officers who no longer serve on the board. Do you want to purchase the coverage?*

Yes: [ ]        No: [✔]

## ATLANTIC MUTUAL LEGAL DEFENSE INSURANCE COMPANY, INC.
### COMMERCIAL INSURANCE APPLICATION

**PREMISIS INFORMATION**

**\* Total Unit Count For all Risk Types Except HOA:** _____  **\*Total HOA Homes:** ___1400___

\* Condominium Association & Co-Op (# of Units) / Homeowners Association (# of Homes)

\* Apartment Complex (# of Apartments) / Hotel (# of Rooms) / Commercial Office Structure (# of Tenants)

**Please complete the following for each physical location.**

Location1:  Risk Type Is:  Condo ☐ HOA ☑ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: 5801 VIA DELRAY _____ City: DELRAY BEACH _____ State: __FL__ Zip: __33484__

Location 2:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 3:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 4:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 5:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 6:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 7:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 8:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 9:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

Location 10:  Risk Type Is:  Condo ☐ HOA ☐ Co-Op ☐ Apartment ☐ Hotel/Motel ☐ Commercial Structure ☐
Address: _____ City: _____ State: _____ Zip: _____

# ATLANTIC MUTUAL LEGAL DEFENSE INSURANCE COMPANY, INC.
## COMMERCIAL INSURANCE APPLICATION

| **SIGNATURE PAGE** |
|---|

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY ( IN FLORIDA, A PERSON IS GUILTY OF A FELONY OF THE THIRD DEGREE).

The undersigned states that he/she is an authorized representative of the Applicant and declares to the best of his/her knowledge and belief and after reasonable inquiry, that the statements set forth in this Application (and any attachments submitted with this Application) are true and complete and may be relied upon by Company in quoting and issuing the policy. If any of the information is this Application changes prior to the effective date of the policy, the Applicant will notify the Company of such changes and the Company may modify or withdraw the quote or binder.

Check here if you understand and agree: ☑ I Agree

Name: _____ Lisa Defabritiis _____

Signature: _____ *Signed by:* Lisa Defabritiis _____
7F01FD874789491...

Date: _____ February 3, 2026 | 9:59:04 AM CST _____

**Docusign**

## Certificate Of Completion

Envelope Id: CD4191A1-70F6-481D-81BB-A6278A7B87FB  Status: Completed
Subject: Complete with Docusign: Atlantic Legal Application.pdf, Revised Finance - Palm Greens Rec.pdf
Source Envelope:
Document Pages: 8                         Signatures: 2                    Envelope Originator:
Certificate Pages: 5                      Initials: 0                      Ryan Looney
AutoNav: Enabled                                                           300 North Beach Street , FL,
EnvelopeId Stamping: Enabled                                              Daytona Beach, FL  32114
Time Zone: (UTC-06:00) Central Time (US & Canada)                        ryan.looney@bbrown.com
                                                                          IP Address: 155.190.7.79

## Record Tracking

Status: Original                          Holder: Ryan Looney             Location: DocuSign
        2/3/2026 7:32:29 AM                       ryan.looney@bbrown.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Lisa Defabritiis<br>amici.sperlonga@gmail.com<br>Board President<br>Security Level: Email, Account Authentication (None) | *Signed by:*<br>*Lisa Defabritiis*<br>7F01FD8747B94F9...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 76.127.237.209 | Sent: 2/3/2026 7:42:30 AM<br>Viewed: 2/3/2026 8:17:27 AM<br>Signed: 2/3/2026 9:59:04 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 2/3/2026 8:17:27 AM<br>    ID: 6b4f1f02-ba87-46fc-9995-4355f69fa6c3 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Deziree Williams<br>Deziree.Williams@bbrown.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 2/3/2026 7:42:30 AM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via Docusign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/3/2026 7:42:30 AM |
| Certified Delivered | Security Checked | 2/3/2026 8:17:27 AM |
| Signing Complete | Security Checked | 2/3/2026 9:59:04 AM |
| Completed | Security Checked | 2/3/2026 9:59:04 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Brown & Brown Insurance Services, Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Brown & Brown Insurance Services, Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

**To advise Brown & Brown Insurance Services, Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at  and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Brown & Brown Insurance Services, Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to  and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Brown & Brown Insurance Services, Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to  and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Brown & Brown Insurance Services, Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Brown & Brown Insurance Services, Inc. during the course of your relationship with Brown & Brown Insurance Services, Inc..