

**ORDERED in the Southern District of Florida on June 17, 2026.**

**Erik P. Kimball**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

PALM GREENS AT VILLA DEL RAY          Case No. 26-11060-EPK
RECREATION CONDOMINIUM                Chapter 11
ASSOCIATION, INC.,

      Debtor.
_____/

### ORDER DENYING MOTION FOR STAY PENDING APPEAL

Interested party Number 1 Condominium Association – Palm Greens at Villa

Delray, Inc. ("Condo 1") filed a *Motion for Stay Pending Appeal or Alternatively Under*

*Bankruptcy Rule 6006(d) Regarding Order Assuming Contracts and Allowing Fees* [Dkt. No.

239; the "Motion"].  Condo 1 seeks a stay pending appeal of this Court's *Order Granting*

*Trustee's Motion to Assume Executory Contracts* [Dkt. No. 229].

The Court requested responses to the Motion and set a hearing but advised the

parties that the hearing may be canceled after the Court reviewed filed responses.  Dkt. No.

241.  The Court carefully reviewed the Motion and responses.  Dkt. Nos. 256, 266, 268, 271,

and 272. In light of the detailed presentation in the Motion and responses, a hearing is not necessary.

**Summary of Ruling**

The chapter 11 trustee, an experienced fiduciary, asked this Court to approve the assumption of executory contracts at the center of administration in this chapter 11 case. Under applicable law, the Court must determine only whether the trustee exercised reasonable business judgment in assuming the contracts. The trustee must assume the contracts to complete reconstruction of the debtor's primary asset, a recreation complex maintained for the benefit of hundreds of homeowners. The reconstruction project has been embroiled in litigation for years, mostly instigated by the debtor. The counterparty on the contracts, a national developer, is ready, willing, and able to complete the project in cooperation with the trustee. The trustee carefully considered the relevant circumstances and exercised his discretion to assume the contracts.

Condo 1 is controlled by a person who, with others, doomed the debtor to bankruptcy by causing it to pursue costly, unnecessary, and mostly unsuccessful litigation against numerous parties including the developer. The same person led the debtor during the first part of this chapter 11 case and likely is responsible for the debtor's actions which caused the Court to appoint a chapter 11 trustee.

Condo 1 objected to assumption. Contrary to the summary process applicable to assumption of executory contracts as provided in binding 11th Circuit precedent, Condo 1 sought to litigate specious claims relating to the contracts, most of which were negated by pre-bankruptcy state court rulings that remain binding on the debtor and Condo 1. The Court overruled Condo 1's objection and, finding that the trustee exercised reasonable business judgment, approved assumption of the contracts.

Condo 1 appealed and now seeks a stay pending appeal.  In light of the Bankruptcy Code and overwhelming case law, the appeal is futile.  Condo 1 has no chance of success in the appeal.  The harm absent a stay alleged by Condo 1 does not flow from the order under appeal, is speculative and undefined, or otherwise does not constitute irreparable injury.  In contrast, the estate, residents, and the developer are injured by further delay in completing the project and by preventing the estate from paying the developer for its ongoing management services which benefit the estate and hundreds of residents.  The public interest does not support standing the usual summary process on its head and permitting Condo 1 to bring the administration of this case to a halt.  To the contrary, the public interest supports allowing the trustee to complete the debtor's recreation complex and allowing the trustee to manage the bankruptcy estate consistent with his reasoned business judgment and extensive experience.

As more fully explained below, the Motion will be denied.[1]

**Background**

The debtor in this chapter 11 case, Palm Greens at Villa Del Ray Recreation Condominium Association, Inc., was formed to own and operate a substantial recreation complex for use by two large 55-plus condominium communities.  Condo 1 is one of those communities.  The other is Palm Greens at Villa Del Ray, Condo 2 Association ("Condo 2").  Equal numbers of representatives from Condo 1 and Condo 2 constitute the debtor's board.[2]

---

[1] In support of the Motion, Condo 1 asked the Court to take judicial notice of five documents [Dkt. No. 240].  The Court considered that request, written responses to it, and presentations of counsel at a hearing, and entered an order denying that request [Dkt. No. 253].  Even if the Court granted Condo 1's request for judicial notice and considered the proposed documents, the Court's ruling on this Motion would not change.

[2] At the time this case was filed, the debtor's board was not so composed.  However, at present the debtor is controlled solely by the chapter 11 trustee.

The original recreation complex owned and operated by the debtor was substantial. It included a large clubhouse with various amenities, a resort style swimming pool and hot tub, and extensive sports facilities spanning several acres.  The entirety of the original recreation complex was located on real property owned by the debtor.

In 2019, the debtor entered into agreements with 13FH Palm Beach, LP ("13FH") including a Development Agreement and its incorporated Temporary Management Agreement.  13FH had acquired a former golf course located adjacent to the debtor's property.  13FH intended to build a substantial townhouse community on part of the former golf course, to be named Delray Trails.  Under the Development Agreement, among other things, the debtor granted 13FH construction and permanent access easements to permit 13FH access to its new residential development and 13FH agreed to make substantial up-front payments to the debtor.  In addition, 13FH agreed to reconstruct the debtor's existing recreation complex for use by residents of Condo 1, Condo 2, and Delray Trails.  The agreed reconstruction included demolition of the existing clubhouse and swimming pool, construction of a new clubhouse and swimming pool complex on real property owned by 13FH, and improvements to the sports amenities on the debtor's real property.  Under the Temporary Management Agreement, for the period between opening of the new clubhouse and turnover of the Delray Trails association to homeowners in that project, 13FH agreed to operate the debtor's recreation complex for a monthly fee payable by the debtor, which the debtor would collect from Condo 1 and Condo 2.

Prior to construction of the new recreation complex or the Delray Trails project, 13FH sold substantially all the affected real property to Lennar Homes, LLC ("Lennar"). Then Lennar began reconstruction of the recreation complex and development of Delray Trails.

Disputes arose among Lennar, the debtor, and Condo 1.  The debtor and Condo 1 filed suit against Lennar, 13FH, and related parties in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.[3]  They alleged that Lennar and 13FH breached the Development Agreement by, among other things, starting construction of Delray Trails without first starting vertical construction on the new recreation complex.

After two amendments to the original complaint in the Miami-Dade action, that court entered orders dismissing the operative amended complaint with prejudice.  In dismissing the action as to Lennar with prejudice, the Miami-Dade court ruled that when Lennar acquired the subject real property from 13FH "Lennar inherited the <u>rights and obligations</u> under the Development Agreement to develop the Recreation Campus, which run with the land.  13FH's <u>rights and obligations</u> under the Development Agreement were freely assignable; the Development Agreement expressly references 13FH's 'successors and assigns.'"  (emphasis added.)

In dismissing the action as to 13FH with prejudice, the Miami-Dade court ruled in detail on the issue of assignment of the Development Agreement to Lennar.  The Miami-Dade court ruled that Lennar is the successor to 13FH under the Development Agreement based on two separate conclusions.

First, the Miami-Dade court determined that the obligations of the parties under the Development Agreement are covenants running with the land, not personal obligations, and "accordingly, the obligations thereunder rest with the owners of the subject properties, not its predecessors."  In support of this conclusion, the Miami-Dade court quoted from the Development Agreement itself, which states that the "benefits and burdens of each covenant set forth in this Agreement shall run with the title to the Property and the

---

[3] As Condo 1, the debtor, and the reconstruction project are in Palm Beach County, it is unclear why the debtor and Condo 1 commenced suit in Miami-Dade County.

Recreation Association Property and shall bind or benefit the record title owners thereof, their respective successors, successors-in-title, and assigns."  In other words, the Miami-Dade court ruled that all aspects of the Development Agreement are binding on the debtor and its property (identified as the "Recreation Association Property") as well as on Lennar, as the successor to 13FH, and Lennar's property.

Second, the Miami-Dade court ruled that because the Development Agreement expressly contemplates an assignment or sale by 13FH to a successor, that the assignment of the Development Agreement from 13FH to Lennar was accomplished by the sale of the subject property to Lennar.  The Miami-Dade court further ruled that the assignment of the rights and obligations under the Development Agreement by 13FH to Lennar did not require a written amendment to the Development Agreement.  The court ruled that under the terms of the Development Agreement 13FH could assign the agreement to any third party, that 13FH's "rights and obligations were freely assignable", and that the assignment did not require a writing.

The Miami-Dade court dismissed the suit against 13FH without further ability to amend.

In the Miami-Dade action, the claims against Lennar centered on the argument that Lennar failed to commence vertical construction on or complete the new recreation complex prior to issuance of vertical building permits for residential units in Delray Trails.  The Miami-Dade court ruled that the Development Agreement does not require Lennar to commence vertical construction on or to complete the recreation complex prior to moving forward with its own residential development.  The court also ruled that Lennar had commenced construction of the recreation complex before permits were issued for its new residential units, thus satisfying the timing requirements of the Development Agreement.

The Miami-Dade court authorized the plaintiffs to file an amended complaint solely against Lennar if they wished to pursue breach of contract claims under sections 4, 5, and/or 6 of the Development Agreement.[4]  These are provisions regarding the construction of landscape buffers, walking trails, and the clubhouse and related amenities.  Instead, the debtor and Condo 1 filed an appeal from the Miami-Dade court's orders dismissing the action with prejudice.

The Miami-Dade court also ruled that both Lennar and 13FH "are entitled to an award of reasonable attorneys' fees pursuant to the Development Agreement, upon which Plaintiffs premised their claims."  The court thus confirmed that the debtor remains subject to the fee shifting provisions of the Development Agreement, among all the other provisions of the agreements.

Then the debtor and Condo 1 filed a complaint against Lennar and related parties in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.  In that second action, the debtor and Condo 1 again argued that Lennar had failed to commence vertical construction on or complete the new recreation complex before beginning construction of its new residential community.  This is the same claim that was dismissed with prejudice in the Miami-Dade suit.[5]  Noting that the complaint before it "mirrors in most material respects the Third Amended Complaint filed in the Underlying Case in Miami-Dade County and contains many allegations that were disposed of by the Miami-

---

[4] By preserving this right, the Miami-Dade court inherently ruled that any amended complaint would be based on breach of contract, meaning the court further acknowledged the applicability of the Development Agreement as an agreement binding in general on the parties.

[5] Contrary to Condo 1's present argument that the Development Agreement is not binding on Lennar as a whole, Condo 1 and the debtor allege in the Palm Beach County complaint that the Development Agreement "is a valid and binding contract in the State of Florida" and then state general breach of contract claims against Lennar as the successor under the Development Agreement.  Nowhere in the Palm Beach County complaint does Condo 1 suggest that Lennar is somehow bound only by the development obligations under the Development Agreement but lacks any rights under the Development Agreement.

Dade County court," the Palm Beach County court transferred venue of the matter to the Miami-Dade court. The debtor and Condo 1 appealed that order as well. The transfer order was recently affirmed on appeal.[6]

The debtor filed a voluntary chapter 11 petition on January 28, 2026. Dkt. No. 1. At that time, the debtor was involved in 21 lawsuits and appeals, including the Miami-Dade and Palm Beach litigation with Lennar. Dkt. No. 42 (pages 36-40). The debtor was a primary and active party in at least 12 of those matters. In addition, the debtor was actively involved in and financing certain actions in which it was not a party including a defamation suit brought by one of its former board members against other individuals. The expense of these many lawsuits brought the debtor to this Court.

The debtor's aggressive litigation strategy continued after it filed its petition here. The debtor removed three state court actions to this Court. Adv. Proc. Nos. 26-01056, 26-01065, and 26-01071. This included the defamation action to which the debtor was not a party but that the debtor was funding, and a purported class action in which the debtor could not be a party. The Court remanded each of those suits.

Lennar completed construction of the new clubhouse, pools, and related facilities, on real property owned by Lennar. That component of the updated recreation complex opened to residents on January 30, 2026, two days after this bankruptcy was filed. Residents of Condo 1 and Condo 2 have been using those facilities.

Lennar filed a motion asking the Court to compel the debtor to either assume or reject the Development Agreement and incorporated Temporary Management Agreement. Dkt. No. 77. Condo 2 partially joined Lennar's motion. Dkt. No. 93. After consideration of responses filed and arguments made at a hearing, at which the Court made a detailed oral

---

[6] The chapter 11 trustee now controls the debtor's involvement in that appeal and is unlikely to pursue further relief.

ruling, the Court directed the debtor to file a motion to assume or reject the agreements by a stated deadline. Dkt. No. 107. Among other things, the Court ruled that the Development Agreement and the Temporary Management Agreement are executory contracts within the meaning of 11 U.S.C. § 365, and that the Development Agreement and the Temporary Management Agreement constitute an integrated agreement that must be assumed or rejected as a unit. The Court ruled that the debtor did not have the ability to insist that Lennar perform under the agreements, at substantial cost to Lennar, but the debtor not also be bound by the agreements. The Court's order at Dkt. No. 107 was not appealed.

Condo 2 filed a motion asking the Court to appoint a chapter 11 trustee in this case. Dkt. No. 114. Lennar joined in that motion and independently asked the Court to appoint a chapter 11 trustee. Dkt. No. 132. The United States Trustee supported the appointment of a trustee. The Court held a hearing, delivered a detailed oral ruling, and directed the United States Trustee to appoint a chapter 11 trustee in this case. Dkt. No. 148. Among other things, the Court found that the debtor's actions in this chapter 11 case were marked by a distinct lack of honesty and forthrightness, beginning essentially on the date the petition was filed. The Court noted troubling conflicts of interest in the management of the debtor, including that the debtor may have claims for breach of fiduciary duty against its own acting board for their use of the debtor's assets to fund litigation for the benefit of others. The Court decried the debtor's attempt to use this Court as the forum to continue the prohibitively expensive litigation crusade that caused it to file the petition in the first place, rather than use the bankruptcy case to extract itself from that so-far unproductive litigation. The Court found that the debtor's operations pre-bankruptcy and the conduct of its bankruptcy case were rife with incompetence and gross mismanagement. These are just some of the findings the Court made at that time.

The United States Trustee appointed Robert Furr as chapter 11 trustee in this case, Mr. Furr accepted the appointment, and the Court confirmed that selection.  Dkt. Nos. 150, 151, and 158.  Mr. Furr is a lawyer with decades of experience as a chapter 7 and chapter 11 trustee, having acted in such capacities in thousands of cases.  He also has extensive experience representing debtors-in-possession in chapter 11 cases, including experience with associations such as the debtor.

After an extension of the deadline approved by the Court, the chapter 11 trustee filed a motion to assume the Development Agreement and incorporated Temporary Management Agreement.  Dkt. No. 170.  The Court considered several joinders and responses and held a hearing on May 6, 2026.  At that hearing, the Court made a detailed ruling on the record and then entered an order authorizing the chapter 11 trustee to assume the Development Agreement and the incorporated Temporary Management Agreement.  Dkt. No. 229.

Condo 1 had objected to the trustee's motion to assume the agreements.  Among other things, Condo 1 argued that Lennar had not proven that it is the assignee of 13FH and so Lennar is not the counterparty to the agreements.  In its ruling, this Court stated that the Miami-Dade court had already ruled in a binding way that Lennar is the counterparty and that 13FH has no remaining obligations under the Development Agreement or the Temporary Management Agreement.  The Court ruled that the Miami-Dade court's orders are binding on the debtor and Condo 1, which was a party to the suit. The Court ruled that there was no question that the trustee exercised reasonable business judgment in assuming the agreements as that was the only reasonable decision under the circumstances of this case.

In connection with assumption of the agreements, Lennar sought cure of defaults in the form of payment of overdue amenity use fees under the Temporary Management

Agreement, attorneys' fees ordered in the Miami-Dade litigation, fees incurred in the related appeals, and fees incurred in this bankruptcy case, all under the Development Agreement's fee shifting provision.[7]  Because the debtor was unable to pay all such sums at the time of assumption, the trustee and Lennar agreed that the estate would pay ongoing monthly fees under the Temporary Management Agreement and that the remainder of the debtor's monetary cure obligations would be accorded administrative expense status with the timing of payment to be addressed at a later time, likely in connection with plan confirmation.  Lennar also sought adequate assurance of future performance in the form of assurance of certain performance obligations by the debtor.  Each of these cure and adequate assurance items is addressed in the Court's order, which states that the determination of certain cure amounts and adequate assurance are "subject to future negotiation between the Trustee and Lennar."  This agreement between the trustee and Lennar allows the estate to obtain the benefit of the Development Agreement and Temporary Management Agreement without the need to provide immediate full cure of past monetary defaults.

Condo 1 appealed the Court's order authorizing the trustee to assume the agreements.  Dkt. No. 234.[8]  The present Motion seeks a stay of that order pending appeal.

---

[7] If the debtor is in default on a contract to be assumed, the trustee must cure or provide adequate assurance that the trustee will promptly cure the default or the trustee cannot assume the contract. The trustee must compensate or provide adequate assurance that the trustee will promptly compensate another party to the contract for actual pecuniary loss resulting from the default.  And the trustee must provide adequate assurance of future performance under the contract.  11 U.S.C. § 365(b)(1).

[8] This is one of five appeals filed in this bankruptcy case.  *See* Dkt. Nos. 165, 166, 167, 191, and 234. Although the first three such appeals were filed in the name of the debtor after the trustee was appointed, Condo 1 filed the last two.  The Court notes that the same individual acted as the client contact for the debtor prior to appointment of the trustee and now acts as the client contact for Condo 1.  That individual is among those subject to the trustee's investigation of claims that may be pursued on behalf of the bankruptcy estate.

**Stay Pending Appeal in Bankruptcy Matters**

Unless stayed, orders and judgments entered by this Court are immediately enforceable upon entry.  Even if an appeal is filed, absent a stay the prevailing party or parties may treat the order or judgment as final.  Under the Bankruptcy Rules[9], certain orders and judgments are automatically stayed for a specified period.  Execution on judgments is stayed for 14 days under Bankruptcy Rule 7062, and certain other orders are stayed for 14 days under Bankruptcy Rules 3020, 4001, 6004, and 6006.  In each such case, the period of stay may be reduced or eliminated by the Court, either under the specific rule providing for the stay or under Bankruptcy Rule 9006(c).  If there is no such automatic period of stay applicable to an order or judgment, or if such period has been eliminated or has expired, the non-prevailing party or parties must seek a stay in order to stop enforcement of, or action consistent with, the order or judgment.

Bankruptcy Rule 7062, incorporating Civil Rule 62, is not applicable to the order under appeal.  When applicable, a party seeking a stay of judgment under Bankruptcy Rule 7062, incorporating Civil Rule 62, may obtain a stay upon posting of a bond or other security in an amount, and with conditions, satisfactory to the Court.  In other words, in most cases where Bankruptcy Rule 7062 applies the appealing party has a right to entry of a stay upon posting the bond required by the Court.

In this matter, Bankruptcy Rule 8007 alone governs the potential issuance of a stay pending appeal.  Unlike Bankruptcy Rule 7062 and Civil Rule 62, Bankruptcy Rule 8007 does not provide for the granting of a stay as of right upon the filing of a sufficient supersedeas bond.  Collier on Bankruptcy ¶ 8007.06 (Richard Levin & Henry J. Sommer eds., 16th ed.).  The determination of whether to grant a stay pending appeal is left to the

---

[9] In this order, the term "Bankruptcy Rule" refers to the applicable Federal Rule of Bankruptcy Procedure, and the term "Civil Rule" refers to the applicable Federal Rule of Civil Procedure.

discretion of the Court.  If a stay pending appeal is warranted, the Court may condition the stay on the posting of " bond or other security."  Fed. R. Bankr. P. 8007(a)(1)(B).  The bond or security is intended to protect the opposing party or parties, which may include the bankruptcy estate generally, against loss that may be sustained as a result of a failed appeal.  Because there is no stay pending appeal as of right under Bankruptcy Rule 8007, the Court must first determine whether a stay is warranted and, if so, determine whether a bond or other security will be required as a condition of the stay.

Ordinarily, the appellant must first seek a stay from this Court and, if unsatisfied, may seek relief from the District Court in which its appeal is lodged.  Fed. R. Bankr. P. 8007.  "Failure to first seek a stay or other relief in the bankruptcy court will ordinarily deprive the district court or appellate panel (or the court of appeals in the case of a direct appeal) of jurisdiction over a motion seeking a stay."  Collier on Bankruptcy ¶ 8007.05 (citations omitted); *Rodriguez v. ALS Commer. Funding, LLC*, No. 19-20452, 2019 U.S. Dist. LEXIS 29651 (S.D. Fla. Feb. 21, 2019); *In re Rivera*, No. 15-04402, 2015 U.S. Dist. LEXIS 151860 (N.D. Cal. Nov. 9, 2015).

"A stay pending appeal is an 'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *Woide v. Fannie Mae (In re Woide)*, 730 F. App'x 731, 737 (11th Cir. 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) and citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)).

**Condo 1 Has No Chance of Success in the Appeal**

Condo 1 must show it is substantially likely to prevail on the merits of its appeal from this Court's order authorizing the trustee to assume the Development Agreement and

the incorporated Temporary Management Agreement.  Under the circumstances of this case, Condo 1 has no likelihood of success in the appeal.

In the Motion, Condo 1 argues that the Court's order rests on "two disputed premises:  first, that certain personal or service rights run with the land; and second, that Lennar may enforce assignment-dependent rights without proving the assignment."  In other words, Condo 1 argues that (a) only certain components of the Development Agreement are covenants running with the land and that absent assumption Lennar does not have the benefit of the remainder of the Development Agreement, and (b) because Lennar has not produced a formal assignment document it cannot be considered a party to the Development Agreement.

Condo 1's primary arguments suffer from two weaknesses.  First, Condo 1's opposition to the trustee's motion to assume the agreements, and the present Motion, exhibit a lack of understanding of the treatment of executory contracts in bankruptcy including the role of the trustee in determining whether to assume or reject an executory contract and the role of the Court in ruling on motions to assume or reject executory contracts.  Second, Condo 1's arguments are contrary to the rulings of the Miami-Dade court which rulings are binding on both the debtor and Condo 1.

Section 365(a) permits a trustee, subject to court approval, to assume or reject an executory contract or unexpired lease of the debtor.  The trustee has only two choices: the trustee may assume an executory contract or the trustee may reject an executory contract. The trustee has discretion to decide whether to assume or reject, subject only to court approval.  *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 975 n.2 (11th Cir. 1987).

Courts "review a trustee's decision to assume or reject a contract under a traditional 'business judgment' standard" and so the "scope of review . . . is narrow."  *Id.*  The trustee

cannot pick and choose portions of contracts to assume or reject. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) ("It is true that a debtor must either assume an executory contract in its entirety or completely reject it…."); *see also* Collier on Bankruptcy ¶ 365.03 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Assumption of an executory contract permits both parties to enforce the contract in full. But rejection of an executory contract is not an outright dissolution of the contract. *Thompkins*, 476 F.3d at 1306. A rejected contract does not disappear; it continues to exist. It is "not cancelled, repudiated, rescinded, or in any other fashion terminated." *Id.* (citation omitted). Rejection of an executory contract constitutes a breach of the agreement by the debtor. 11 U.S.C. § 365(g). In this case, the breach would be deemed to have occurred immediately before the petition date. 11 U.S.C. § 365(g)(1). After rejection, the counterparty may file a claim in the bankruptcy case for damages resulting from rejection. 11 U.S.C. § 502(g).

In reviewing a motion to assume or reject an executory contract, courts do not adjudicate disputed aspects of the contract. "[A] motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993). The Court does not exercise its own business judgment or engage in extensive analysis of the contract. "[A] bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate." *Id.* at 1099. Section 365 does not authorize courts "to

resolve questions involving the validity of contracts before deciding whether to permit the trustee or debtor-in-possession to assume the contracts." *Id.*

Here, the trustee in his discretion determined that assuming the Development Agreement and incorporated Temporary Management Agreement most benefited the estate. The trustee determined to assume those agreements so the debtor may obtain its bargained-for updated recreation complex and so the residents of Condo 1, Condo 2, and Delray Trails can enjoy those amenities. The trustee determined that rejecting the agreements was not more beneficial to the estate. Based on the circumstances of this case, the Court agreed that the trustee's decision to assume the agreements was well within his discretion.

At the time the trustee sought to assume the agreements, the debtor was in default as the debtor had failed to pay several months of fees due under the Temporary Management Agreement and the debtor was liable for legal fees and expenses under the fee shifting provisions of the Development Agreement, including legal fees and expenses awarded in the Miami-Dade litigation but which had not yet been liquidated. As discussed above, the trustee negotiated a favorable arrangement with Lennar, delaying liquidation and payments of those sums, which agreement is incorporated in the Court's order authorizing assumption.

Condo 1 challenges the trustee's determination to assume the agreements based in part on the false understanding that if the agreements were rejected Lennar would still have to perform its obligations under the Development Agreement but would not retain any of its rights under that agreement, apparently including permanent easements previously granted for access to Delray Trails and the new clubhouse complex. In support of this argument, Condo 1 posits that only parts of the Development Agreement constitute covenants running with the land, which Condo 1 believes would remain effective vis-a-vis

Lennar even if the agreements were rejected, and that after rejection of the agreements the debtor could nevertheless force Lennar to complete construction but could deny Lennar access across the debtor's property.  Although not stated, it appears that Condo 1's intention would be to extort concessions from Lennar.  But the estate cannot reject the burdens of the agreements yet keep the benefits.  *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007).

In the context of the present Motion and the appeal itself, Condo 1's arguments fail for two reasons.  First, even if Condo 1 were correct, and they clearly are not, there is no reason for the trustee to subject this bankruptcy estate to substantial risk of failure and expense by pursuing rejection of the agreements.  The trustee, a true neutral with extensive relevant experience, thoroughly investigated the facts and circumstances of this case.  He reviewed the Development Agreement and Temporary Management Agreement; considered pleadings and orders in this case and in the several state court matters involving the debtor, Lennar, Condo 1, Condo 2, and other parties; met with representatives of the association boards and the facilities manager; met with homeowners; toured the old and new facilities and amenities; and negotiated with Lennar's counsel and representative. Based on his review of the circumstances, it is well within the trustee's discretion to determine that the estate is favored by assumption of the agreements, *in toto*, rather than attempt to reject the agreements and continue with what would undoubtedly be extended and expensive litigation that the bankruptcy estate cannot afford to fund.  The Court pointed this out in granting the trustee's motion to assume.  Put another way, even if Condo 1 could be right, the trustee is not required to take the litigation risk or cause the estate to suffer the cost and delay.

Second, Condo 1 ignores the breadth of the Miami-Dade court's rulings, summarized above.  Condo 1's arguments here are precluded by that court's ruling that Lennar is the

assignee of 13FH's rights and obligations under the Development Agreement not only based on a covenant running with the land analysis, but also based on the fact that the Development Agreement, by its own terms, is freely assignable and no written amendment was required.[10] Even if the Miami-Dade court's rulings had been based solely on the determination that the Development Agreement is a covenant running with the land, that court made clear that it considered the entirety of the agreement and that the agreement is binding as a whole on both sides.[11]

Some of Condo 1's arguments in the Motion are craftily presented and appear to be purposely deceptive.

Condo 1 argues that the Court's order "gives practical effect to an assignment of rights though the assignment agreement has never been produced or entered into evidence." Condo 1 states that Lennar "claims rights through an unproduced assignment." This is simply false. There is no "missing assignment." Lennar has not argued that there is a separate assignment document. The Miami-Dade court already ruled on this issue in favor of Lennar, that ruling is binding on the debtor and Condo 1, and this Court agrees with that ruling. But even if there was no such ruling, under the circumstances of this case it is appropriate for the trustee to exercise his discretion to accept Lennar as the obvious

---

[10] Issue preclusion applies in bankruptcy proceedings. This Court applies the preclusion law of Florida since the ruling at issue was rendered by a Florida state court. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675-76 (11th Cir. 1993). Florida law precludes litigation where the parties and issues are identical, the matter at issue was fully litigated, and a court of competent jurisdiction renders a final decision. *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021) (citations omitted). Under Florida law, a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal unless an appellate court tries the case *de novo*. *CCB, LLC v. BankTrust*, 552 F. App'x 963, 965 (11th Cir. 2014) (citing *Reese v. Damato*, 33 So. 462, 464 (Fla. 1902)).

[11] As stated in its ruling on the trustee's motion to assume, this Court agrees that Lennar is the sole existing counterparty to the Development Agreement and the integrated Temporary Management Agreement.

assignee of 13FH and negotiate the assumption with Lennar to avoid the cost of unnecessary, costly, and likely unsuccessful litigation.

Likewise, Condo 1 argues that the prevailing party fee provision in the Development Agreement is not a covenant running with the land, and that the acknowledgement in this Court's order that Lennar has the right to collect legal fees amounts to this Court ruling that the fee provision is enforceable as a covenant running with the land.  First, the Miami-Dade court awarded fees to Lennar under the fee shifting provision of the Development Agreement, so there is already a ruling binding on the debtor and Condo 1.  Second, when the trustee assumes an executory contract all unpaid monetary obligations of the debtor under that contract must be cured.  The provision of this Court's order addressing fees owing to Lennar by the debtor is simply a reflection of the requirements established by Congress in the Bankruptcy Code.  The trustee did not have the option of assuming the agreements but not paying what they require.

Condo 1's Motion repeatedly refers to 13FH as if it remains a counterparty to the Development Agreement and Temporary Management Agreement.  It is not.  There is nothing in this Court's ruling to suggest that 13FH has any duties to the bankruptcy estate under the Development Agreement or integrated Temporary Management Agreement. This is because the Miami-Dade court ruled conclusively, in an order binding on the debtor and Condo 1, that 13FH has no such duties.

Condo 1 states that the Court's order allows Lennar to treat the entirety of the Development Agreement and Temporary Management Agreement as enforceable, as though this is something remarkable.  As with any order authorizing assumption of executory contracts, the order under appeal empowers both the bankruptcy estate and Lennar to enforce the agreements as they are written.  That is the purpose and goal of assumption of executory contracts under section 365.  There is no doubt that the

Development Agreement and Temporary Management Agreement are executory contracts, as the Court ruled in a prior final order.  Once assumed, it does not matter whether the obligations in the assumed contracts would run with the land or not; the agreements are then binding on and benefit all parties, according to their complete terms.

Condo 1 points to its litigation against Lennar in Palm Beach County as an ongoing suit where its challenges to the Development Agreement remain in play.  Condo 1 describes that suit as "a new action . . . asserting those breach-of-contract claims the Miami-Dade County court had noted were viable" under the Development Agreement.  Condo 1 thus argues that the complaint in the Palm Beach County action is simply a substitute for the amended complaint authorized by the Miami-Dade court.  This is not the case.  As the Palm Beach County court recognized, the "new" complaint in Palm Beach County is just a regurgitation of allegations and claims rejected by the Miami-Dade court, which is why the Palm Beach County court transferred the second suit to Miami-Dade County.  In any case, Condo 1 suggests that their state court litigation should be permitted to proceed to conclusion before the agreements are assumed here.  As noted above, binding case law does not require that.

Similarly, Condo 1 argues that before approving assumption of the agreements, this Court should have independently weighed each component of the Development Agreement to determine whether it is a provision that would run with the land under Florida law.  There are two reasons why such a review was not required or appropriate.  First, as elaborated above, in reviewing a trustee's motion to assume or reject an executory contract this Court does not address contract disputes.  The assumption and rejection of executory contracts is a summary process in which the Court's ruling is limited to determining whether the trustee exercised reasonable business judgment in his decision, not whether each and every claim relating to the affected contracts may be determined in the debtor's

favor.[12]  Here, the trustee was well within his discretion to assume the agreements.

Second, the Miami-Dade court already ruled in a binding way that Lennar is the successor

to 13FH under the agreements.

In light of (a) the trustee's thorough review of the circumstances of this case relevant

to his decision to assume the agreements, (b) the deference to be accorded by this Court to

the trustee's business judgment in determining that the bankruptcy estate should assume

the agreements, (c) the orders of the Miami-Dade court which are preclusive with regard to

Lennar's rights under the agreements, (d) the obvious benefit to the estate obtained by

assumption of the agreements, and (e) the equally obvious detriment to the estate if the

agreements were rejected, Condo 1 has no chance of success in its appeal from the order

authorizing assumption of the Development Agreement and integrated Temporary

Management Agreement.

**Condo 1 Will Not Suffer Irreparable Injury Absent a Stay**

Condo 1 argues that absent a stay the trustee "has indicated an intention or

consideration of imposing assessments, encumbering estate assets, paying attorneys' fees,

paying temporary management fees, establishing governance consequences, and

administering litigation based on the premise that Lennar stands in 13FH's shoes and that

13FH may abandon rights through transfer."  None of these supposed impacts constitute

irreparable injury.  Among other things, the alleged harm is either too speculative to

---

[12] Amazingly, Condo 1 cites relevant precedent on this point but somehow concludes that, because this Court should not adjudicate disputed contract issues in the context of a motion to assume a contract, the Court should deny the motion to assume until all such disputes are litigated to conclusion.  *See* Dkt. No. 239 (pages 13-14).  This is exactly the opposite of what the case law provides.  The very case cited by Condo 1 stands for the proposition that the Court's review is limited to "a judgment of the sort a businessman would make" which "could turn out to be wrong" but would be "simply an error of business judgment, not a legal error."  *Orion Pictures Corp.* 4 F.3d at 1099.

constitute irreparable injury or involves the potential payment of money which can be recovered.

The trustee has stated during hearings, and apparently when meeting with homeowners, that there is a possibility of assessment of homeowners as a result of the debtor's bankruptcy case. The trustee has not stated that such assessments would flow specifically from the assumption of the Development Agreement and integrated Temporary Management Agreement. There is no reason to believe the order under appeal will result in assessments. Indeed, as the Court stated during its ruling, it is very likely that the litigation resulting from an attempted rejection of the agreements would result in much greater expense and thus be more likely to result in assessments.

While the trustee has stated that a chapter 11 plan in this case may involve the debtor encumbering its assets to obtain necessary capital, there is no plan on file at this time. Condo 1 and other parties in interest will have ample opportunity to be heard on any proposed plan. It is already clear that the debtor does not have sufficient revenue to pay its ongoing expenses as well as outstanding claims. This would be even more true if the trustee were to reject the Development Agreement and Temporary Management Agreement and embroil the estate in further expensive and likely doomed litigation. In any case, this alleged harm does not flow from the order under appeal.

The order authorizing assumption makes clear that the debtor's remaining monetary cure obligations, which include payment of attorneys' fees under the Development Agreement, are subject to further negotiation between the trustee and Lennar. This will be addressed in a chapter 11 plan or by motion and therefore will be subject to creditor review and opportunity to object. There is no imminent risk that the trustee will pay Lennar's legal fees. In any case, the estate could recover the payment and so it is not irreparable.

Lennar operates the primary recreation facilities consisting of the new clubhouse and pool complex on Lennar's own property.  Residents of Condo 1 and Condo 2 use these facilities daily.  By assuming the Temporary Management Agreement, the estate confirmed its obligation to make monthly payments to Lennar for its services (reserving past due amounts for further negotiation).  If the trustee had not assumed the Temporary Management Agreement, the estate would still be liable to Lennar under 11 U.S.C. § 503.  Based on presentations earlier in this case, it appears likely that the monthly fee under the Temporary Management Agreement is lower than the actual value conferred by Lennar and so Lennar's administrative expense claim likely would be higher than the contractual fee.  In any case, the payment of contractual fees to Lennar is not irreparable injury as such fees are recoverable.

Condo 1 does not explain what it means by the phrase "establishing governance consequences."  Perhaps Condo 1 refers to the debtor's management change to occur when the Delray Trails project is substantially sold.  Under the Development Agreement, at the time of turnover of the Delray Trails association by Lennar to homeowners in that subdivision, the debtor will be managed by equal numbers of representatives selected by Condo 1, Condo 2, and Delray Trails.  But the trustee has completely supplanted the debtor's board until a plan is confirmed in this case.  All parties in interest will have an opportunity to weigh in on any plan.  There is no imminent risk that the debtor's management structure will change.

Condo 1 argues that the trustee will be "administering litigation" based on the assumption of the agreements.  Condo 1 argues that absent a stay the trustee may take "litigation positions belonging to or materially affecting Condo No. 1 and its residents."  Condo 1 provides no hint as to what this means.  The trustee is the sole person with authority to take any action in the name of the debtor.  This includes pursuing claims held

by the estate and defending claims against the estate. These rights and duties persist whether or not the trustee assumed the agreements. Based on recent argument during hearings, the Court suspects that this concern centers on the trustee's stated intention to investigate claims of the estate against the debtor's former board members, including the primary client contact for Condo 1 who was previously the primary client contact for the debtor. While it is possible some of such claims may relate to the debtor's actions in connection with Lennar, it is unlikely such claims will be affected by the assumption or rejection of the Development Agreement and Temporary Management Agreement.

None of the foregoing constitute irreparable injury within the meaning of Bankruptcy Rule 8007.

**The Bankruptcy Estate, Residents, and Lennar Will Suffer if a Stay is Imposed**

Condo 1 argues that granting a stay pending appeal will not harm Lennar as "it has not loaned money to the Debtor, advanced estate financing, or extended credit in reliance on estate assets" as though these are the only reasons a stay may be required. If a stay is entered, the bankruptcy estate will suffer as there will be further delay in completion and turnover of the recreation complex for the benefit of all residents. Condo 1 ignores the fact that Lennar is daily devoting its resources to operating the substantial clubhouse and pool facilities for the benefit of the debtor's residents. Lennar has a right to be paid its ongoing fees under the Temporary Management Agreement for those services. If those fees are not paid, Lennar may prohibit residents in Condo 1 and Condo 2 from access to the new clubhouse and pools.

**The Public Interest Supports Permitting the Trustee and Lennar to Proceed**

The Bankruptcy Code and applicable case law provide that the trustee has discretion to determine whether to assume or reject executory contracts based on his reasonable business judgment, subject only to court review to ensure his discretion was

applied properly. Condo 1 asks this Court and the District Court to stand this summary process on its head, and in the meantime put a halt to the construction project at the center of administration of this chapter 11 case. The public interest does not support perverting that summary process so that Condo 1 may tilt at windmills in hopes of extorting a better deal from Lennar. The public interest supports permitting the trustee and Lennar to complete construction of the debtor's new recreation complex without further interference or delay.

**The Court Need Not Address the Question of a Bond**

Because Condo 1 is not entitled to a stay pending appeal, it is not necessary for the Court to determine whether a bond is required or the amount of a bond. However, the Court notes that if a stay were appropriate in this case, the required bond would be substantial as Lennar is due monthly fees for management of the existing recreation complex for the debtor's residents and the debtor and its residents will suffer damages as a result of cessation of construction on the long-awaited recreation complex. Lennar's suggestion that the bond would need to be at least $480,000, plus additional amounts representing damages to the estate for at least a six-month period, is reasonable under the circumstances of this case.

**Bankruptcy Rule 6006(d) Does Not Apply**

Condo 1 also cites Bankruptcy Rule 6006(d). That rule provides for an automatic stay for 14 days of any order authorizing the assignment by the bankruptcy estate of a contract under 11 U.S.C. § 365(f). The trustee did not seek an assignment to Lennar of the Development Agreement and integrated Temporary Management Agreement because Lennar was already the counterparty to those agreements. Bankruptcy Rule 6006(d) does not apply here. Even if it did, the short-term stay under that rule would have expired on May 27, 2026.

**Order**

For the foregoing reasons, the Court ORDERS and ADJUDGES as follows:

1.      The *Motion for Stay Pending Appeal or Alternatively Under Bankruptcy Rule 6006(d) Regarding Order Assuming Contracts and Allowing Fees* [Dkt. No. 239] is DENIED.

2.      The hearing scheduled for June 22, 2026 to consider the *Motion for Stay Pending Appeal or Alternatively Under Bankruptcy Rule 6006(d) Regarding Order Assuming Contracts and Allowing Fees* [Dkt. No. 239] is CANCELED.

3.      The Clerk is directed to forward a copy of this order to the District Court to be docketed in the appeal resulting from the notice of appeal filed at docket number 234.

###

Copy to:
Terry A. C. Gray, Esq.

*Terry A. C. Gray, Esq. must serve a copy of this order on all appropriate parties and file a certificate of service with the Clerk.*